## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## HILLSBOROUGH COUNTY, FLORIDA
## CIVIL DIVISION

**GARDITH S. LEMY** and **MARILYN HILL**, individually, and on behalf of all those similarly situated,

        Plaintiffs,

vs.

**DIRECT GENERAL FINANCE COMPANY, DIRECT GENERAL INSURANCE COMPANY, DIRECT GENERAL INSURANCE AGENCY, CERTAIN UNDERWRITERS AT LLOYDS, LONDON, NATIONAL INSURANCE UNDERWRITERS, INC., NATIONAL ADJUSTMENT BUREAU, INC., NATION MOTOR CLUB, INC., NATION SAFE DRIVERS, LLC, NSD GROUP, LLC, LESTER KALMANSON AGENCY, INC.,** and **MITCHEL KALMANSON,**

        Defendants.

_____/

**CLASS REPRESENTATION**

Case No.:    09-CA-021301

Division:    D

RECEIVED
NOV 1 0 2011
CLERK OF CIRCUIT COURT
HILLSBOROUGH COUNTY, FL

## THIRD AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs, Gardith S. Lemy ("**Lemy**") and Marilyn Hill ("**Hill**"), bring this action, individually and on behalf of all those similarly situated, against Defendants, Direct General Insurance Company ("**Direct General**"), Direct General Insurance Agency ("**Direct General Insurance Agency**"), Direct General Financial Services, Inc. ("**Direct General Financial**"), Certain Underwriters at Lloyd's, London ("**Certain Underwriters**"), Nation Motor Club, Inc. ("**Nation Motor Club**"), National Insurance Underwriters, Inc. ("**NIU**"), National Adjustment Bureau, Inc. ("**NAB**"), Nation Safe Drivers, LLC ("**Nation Safe Drivers**"), NSD Group, LLC

("**NSD Group**") (Nation Motor Club, NIU, NAB, Nation Safe Drivers, and the NSD Group shall be collectively referred to as the "**Nation Safe Defendants**"), Lester Kalmanson Agency, Inc. ("**Kalmanson Agency**"), and Mitchel Kalmanson, individually, ("**Kalmanson**"), and state:

## PARTIES, JURISDICTION, AND VENUE

1.      This is a class action pursuant to Rule 1.220(b)(2) and (b)(3) of the Florida Rules of Civil Procedure seeking declaratory relief and damages in excess of $15,000.00, exclusive of interest, costs, and attorneys' fees.

2.      Lemy and Hill are residents of Hillsborough County, Florida.

3.      Direct General is a foreign corporation doing business under the laws of the State of Florida.

4.      Direct General Insurance Agency is a foreign corporation doing business under the laws of the State of Florida.

5.      Direct General Financial is a foreign corporation doing business under the laws of the State of Florida and was granted a license (License No. 89567) on June 4, 1998 by the State of Florida, Office of Insurance Regulation, n/k/a Department of Financial Services, to offer premium finance agreements to consumers in Florida.

6.      Nation Motor Club is a Florida corporation with its principal place of business at 800 Yamato Road, Suite 100, Boca Raton, Florida 33431.

7.      NIU is a Florida corporation with its principal place of business at 800 Yamato Road, Suite 100, Boca Raton, Florida 33431.

8.      NAB is a Florida corporation with its principal place of business at 800 Yamato Road, Suite 100, Boca Raton, Florida 33431.

9.     Nation Safe is a Florida limited liability company with its principal place of business at 800 Yamato Road, Suite 100, Boca Raton, Florida 33431.

10.    NSD Group is a Florida limited liability company with its principal place of business at 800 Yamato Road, Suite 100, Boca Raton, Florida 33431.

11.    Kalmanson Agency is a Florida corporation with its principal place of business at 235 South Maitland Avenue, Suite 201, Maitland, Florida 32751.

12.    Kalmason is a Florida resident and citizen of the State of Florida.

13.    Lloyd's of London is an insurance market created to facilitate, among other things, the sale of Vehicle Protection Insurance to Florida residents like Plaintiffs.  As part of this market, entities known as Names form Syndicates to underwrite insurance policies, including the policies issued to Plaintiffs.  These Syndicates are then managed by Managing Agents.

14.    These Syndicates enter into binding authority agreements with Florida Surplus Lines Agents to sell certain types of insurance underwritten by the Lloyd's Syndicates, including insurance coverage for motor vehicle related expenses, including, among other things, towing, loss of use, rental car, hospital stays as a result of an automobile accident (the "**Vehicle Protection Insurance**").

15.    For at least the past decade, numerous Lloyd's Syndicates have entered into binding authority agreements with Kalmanson Agency for the sale of the Vehicle Protection Insurance.  Kalmanson is the actual Florida licensed surplus lines agent for these insurance policies.

16.    Certain Underwriters are all of the Names and/or Syndicates who underwrite and provide insurance for Vehicle Protection Insurance policies that were delivered in the State of Florida at all times relevant for policies and were sold pursuant to a binding authority agreement

3

with Kalmanson Agency.  The names of these syndicates are contained on documents that are subject to a confidentiality order between Plaintiffs and Defendants and therefore cannot be listed here.  All of these Defendants, however, are *sui juris*.

17.   It also appears that a non-named entity described as Lloyd's Underwriters at London is an eligible surplus lines insurer under Florida law.  This non-party received its eligibility on October 1, 1998, and has been given an NAIC number AA1122000 and a FEIN 990000068.  It appears this is the only Lloyd's entity that is eligible to write surplus lines insurance in Florida.  Accordingly, it is also Plaintiffs' understanding and belief that none of the Syndicates, nor the Names involved in this action, are eligible surplus lines insurers, and are, in fact, underwriting unauthorized insurance under Florida law.

18.   Venue is proper in Hillsborough County, Florida because, among other things, (a) Defendants have offices for the transaction of customary business in Hillsborough County, Florida, and (b) Plaintiff's causes of action accrued in Hillsborough County, Florida.

19.   All conditions precedent to the commencement and prosecution of this action and the granting of the relief requested have been performed, satisfied, excused, or waived.

## FACTS COMMON TO ALL COUNTS

20.   Direct General, Direct General Financial, and Direct General Insurance Agency are a group of commonly owned and/or otherwise affiliated companies doing business in the State of Florida and, at all times material, were referred to as companies within the "Direct General Group of Companies."  The Direct General Group of Companies are run by the identical management team pursuant to the same policies and procedures.

21.   As discussed more fully below, Defendants, at all times material, together with their employees and agents, both known and unknown, engaged in the following regular and

repeated violations of law: (a) acting in concert with each other through a common scheme to deceive, mislead, and systematically charge consumers, like Plaintiffs and the proposed Class, for unnecessary, valueless insurance coverage, as well as systematically charging unlawful finance charges; (b) accepting, condoning, or permitting their employees' and agents' conduct described herein, which constitutes a breach of their duties to Plaintiffs and the proposed Class; (c) providing encouragement and substantial assistance to each other and their employees and agents in accomplishing their unlawful conduct; and (d) conducting activities in conjunction with all Defendants and employing, engaging, or supervising their employees and agents to carry out such unlawful conduct.

22.    At all times material, Direct General, Direct General Financial, and Direct General Insurance Agency acted as the mere alter ego of, and operated in concert with, the other Defendants within the Direct General Group of Companies as part of the wrongful, tortuous, and unlawful pattern and practices set forth herein.

23.    At all times material, Defendants have acted as co-conspirators with respect to the acts or steps taken by each of them in connection with the events described herein, acted as agents of each other pursuant to a common goal or scheme to carry out the wrongful patterns of conduct alleged herein, and have jointly conspired to conceal their wrongful, tortious, and unlawful acts and practices from the public, such as Plaintiffs and the proposed Class, in order to increase their profits.

24.    At all times material, Direct General, Direct General Financial, and Direct General Insurance Agency produced, sold and financed hundreds of thousands of Vehicle Protection Insurance policies to citizens and residents within the State of Florida.  The Vehicle

Protection Insurance is an ancillary product that is sold in conjunction with standard no-fault and property damage coverage that is required under the Florida Financial Responsibility law.

25.     At all times material, the Nation Safe Defendants were involved in the sale and issuance of these ancillary insurance products, in addition to automobile club services, such as towing, roadside assistance, and rental reimbursement.

26.     Upon Plaintiffs' information and belief, Nation Motor Club is the parent company with respect to the Nation Safe Defendants, NIU issues the insurance, NAB processes the insurance claims, Nation Safe Drivers is a holding company for one or more of the Nations Safe Defendants, and NSD Group is also a holding company for one or more of the Nations Safe Defendants. The Nation Safe Defendants also administered these products and provided claims services.

27.     At all times material, the Nation Safe Defendants entered into an agreement whereby Direct General Insurance Agency became the Nation Safe Defendants' subagent to solicit, issue, and bind insurance in connection with the Vehicle Protection Insurance.

28.     At all times material, Kalmanson Agency and/or Kalmanson created the Vehicle Protection Insurance product, in an apparent effort to circumvent the Florida Insurance Code and its intent that insurance sold to the general public, as opposed to specialty risks, be sold through the admitted market. As part of its scheme, Kalmanson Agency and/or Kalmanson entered into contractual relations with Certain Underwriters where Certain Underwriters actually underwrote these policies. Kalmanson acted as the surplus lines agent with respect to these policies. Kalmanson Agency and/or Kalmanson then entered into a relationship with the Nation Safe Defendants to issue these policies, pay the surplus lines tax on the policies, administer the polices, and to adjust all claims that were submitted on what amounts to worthless insurance.

29.     As discussed above, the Nation Safe Defendants then entered into a relationship with Direct General Insurance Agency to sell these worthless Vehicle Protection Insurance policies to Direct General Insurance Agency's customers and would then be financed through Direct General Financial.  It is not clear whether the Vehicle Protection Insurance concocted by Kalmanson Agency and/or Kalmanson was sold exclusively through Direct General Insurance Agency; therefore, an additional amendment may be necessary to join additional insurance agents that sold these policies.  These additional parties, however, are not indispensable.

30.     The Vehicle Protection Insurance policies were underwritten by Certain Underwriters through binding authority agreements for the sale of the Vehicle Protection Insurance between Certain Underwriters and Kalmanson Agency.

31.     On March 19, 2008, Lemy purchased a standard no-fault and property damage automobile insurance policy underwritten by Direct General. At the point of sale, Direct General Agency also sold to Lemy a Vehicle Protection Insurance policy (the "**Lemy Policy**").  The Lemy Policy is underwritten by Certain Underwriters.  Defendants possess a copy of the Lemy Policy.

32.     When Lemy entered into the Lemy Policy, she also entered into a "Premium Finance Agreement" with Direct General Finance to finance the premiums due under the Lemy Policy and the no-fault and property damage coverage.  A copy of Lemy's Premium Finance Agreement and Disclosure Form is attached as **Exhibit No. 1**.

33.     On January 4, 2007, Hill purchased a standard no-fault and property damage automobile insurance policy underwritten by Direct General. At the point of sale, Direct General Agency also sold to Hill a Vehicle Protection Insurance policy (the "**Hill Policy**").  The Hill Policy is underwritten by Certain Underwriters.

34.     When Hill entered into the Hill Policy, Hill also entered into a "Premium Finance Agreement" with Direct General Finance to finance the premiums due under the Hill Policy and the no-fault and property damage coverage.  A copy of Hill's Premium Finance Agreement and Disclosure Form is attached as **Exhibit No. 2**.

35.     The Lemy Policy and the Hill Policy provide the following:

> **Surplus Lines.** This Certificate is issued pursuant to applicable state surplus lines insurance statutes.

> This language is not in capital letters, as required by Florida law.

36.     Defendants claim that the Vehicle Protection Insurance provides "valuable additional insurance coverage for just pennies a day" and that it covers, among other things, medical expense reimbursement, up to 365 days of hospital room coverage, $10,000 bail bond, $100 ambulance assistance, up to $250 rental car reimbursement for collision or theft, up to $125 rental car reimbursement for mechanical breakdowns, and $300 personal effects reimbursement.

37.     At all times material, the Vehicle Protection Insurance was either (a) not regulated under the Florida Insurance Code, §§ 624.01 *et seq.*, Florida Statutes, in whole or in part, or, (b) in the alternative, if the Vehicle Protection Insurance was regulated under the Florida Insurance Code, it is an otherwise unauthorized insurance product because it does not comply with key provisions Florida Insurance Code, as alleged herein.

38.     At all times material, the Vehicle Protection Insurance was allegedly offered and sold by Certain Underwriters, which are not an "Eligible Surplus Lines Insurer," as defined by § 626.914(2), Florida Statutes.

39.     Moreover, in order for Surplus Lines Insurance to legally be issued under Florida law, coverage must actually be "authorized" in accordance with the Florida's Surplus Lines Law, §§ 626.913 *et seq.*, Florida Statutes, and must comply with all of the provisions of that Law.

40.     Defendants have failed to meet the regulations set forth under Florida's Surplus Lines Law, which include, among other things, the statutory requirements under § 626.915, Florida Statutes, which only authorizes the sale of insurance though a surplus lines insurer when certain insurance coverage cannot be procured from authorized insurers. Plaintiffs assert that the insurance coverage afforded by the Vehicle Protection Insurance policies at issue in this case could be procured through authorized insurers.

41.     Defendants failed to meet the regulations set forth under Florida's Surplus Lines Law, which include, among other things, the statutory requirements under § 626.916(1)(a), Florida Statutes, prohibiting the sale of such products, like the Vehicle Protection Insurance, unless the full amount of insurance is not procurable from the admitted insurance market, performing a diligent effort to locate coverage with 3 admitted carriers regulated and licensed by the State of Florida before completing any application for coverage with a Surplus Lines Insurer, verifying that such a diligent effort was made and selling the insurance through a licensed surplus lines agent.

42.     The Vehicle Protection Insurance policy also violates § 626.924, Florida Statutes, because required language does not appear on the first page of the policy.

43.     Certain Underwriters also failed to comply with §§ 627.062 or 627.0651, Florida Statutes, regarding its rates, and did not comply with § 627.410, Florida Statutes, for approval of its forms. The reason for not complying with these statutes was a concerted effort on the part of all Defendants to avoid the regulatory authority of the Florida Office of Insurance Regulation.

44.     Section 627.8405, Florida Statutes, prohibits the purchase and financing of any product not regulated under the Florida Insurance Code. Specifically, § 627.8405 provides, in pertinent part:

627.8405 Prohibit acts; financing companies. – No premium finance company shall, in a premium finance agreement or other agreement, finance the cost of or otherwise provide for the collection or remittance of dues, assessments, fees, or other periodic payments of money for the cost of:

. . . .

(3)   **Any product not regulated under the provisions of this insurance code**.

**This section also applies to premium financing by any insurance agent or insurance company under part XVI.** The commission shall adopt rules to assure disclosure, at the time of sale, of coverages financed with personal injury protection and shall prescribe the form of such disclosure.

45.   As a result of Defendants' unfair and deceptive business practices, the Vehicle Protection Insurance policy was not authorized under the Florida Surplus Lines Law, was not issued in compliance with the Florida Surplus Lines Law, and is, in fact, an unauthorized insurance product.

46.   As a result of their unfair and deceptive business practices, Defendants failed to properly notify Plaintiffs and the proposed Class that they were bundling insurance not required by law with their policies and charging premium finance charges for this insurance product.

## CLASS ALLEGATIONS

47.   Plaintiffs, together with such other individuals that may join this action as class representatives, bring this action on their own behalf and as a class on behalf of all similarly situated Florida citizens who purchased the Vehicle Protection Insurance from Defendants on or after December 2, 2004 (the "**Class**").   Specifically excluded from the class are persons who have made a claim under the Vehicle Protection Insurance at issue in this action.   The Class will also be divided into one subclass comprised of the following: All persons who have purchased Vehicle Protection Insurance from Defendants who financed the insurance (the "**Subclass**").

48.    While the exact number of class members is unknown to Plaintiffs at this time, there are hundreds, if not thousands, of citizens and residents of the State of Florida who are potential members of the Class.

49.    The number of members of the Class is believed to be at least in the hundreds of thousands, and so numerous that separate joinder of each member is impractical.  The number of members of the Class who will be affected in the future is likewise incapable of precise determination, but is substantial.

50.    This action poses questions of law and fact that are common to and affect the rights of all members of the Class.

51.    Based on the facts and circumstances set forth herein, Plaintiffs' claims are typical of the claims of the members of the Class.

52.    Further, other individual plaintiffs may elect to join this action upon such grounds as the Court may set forth, and these individuals will likewise have issues that are common to those of all other Class members.

53.    Common questions of fact and law exist as to all members of the Class, and such questions predominate over any questions solely affecting any individual member of the Class.

54.    Based on the facts and circumstances set forth herein, Plaintiffs will fairly and adequately protect and represent the interests of each member of the class.

55.    Plaintiffs have retained law firms, which are listed at the end of this Complaint, that are experienced in handling class actions involving, among other things, consumer rights, over the last five years.  As a result, Plaintiffs' attorneys are qualified and experienced in class action litigation and will adequately protect the interests of the Class.

56.     Plaintiffs bring this class action under Rule 1.220(b)(2), Florida Rules of Civil Procedure, because Defendants have acted or refused to act on grounds generally applicable to all the members of the Class, thereby making final injunctive relief or declaratory relief concerning the Class as a whole appropriate.

57.     Plaintiffs bring this class action under Rule 1.220(b)(3), Florida Rules of Civil Procedure, because common questions of fact and law exist as to all Class members, and such questions predominate over any questions solely affecting any individual member of the Class.

58.     Class treatment of this action is superior to other available methods for fair and efficient adjudication of this controversy.   There will be no manageability problems with prosecuting this case as a class action.

## COUNT I
### Violation of § 627.8405, Florida Statutes
### (Direct General, Direct General Insurance Agency, Direct General Financial, and Certain Underwriters)

59.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 58 above.

60.     This is an action by Plaintiffs and the proposed Class against Direct General, Direct General Financial, Direct General Agency, and Certain Underwriters for violations of § 627.8405, Florida Statutes.

61.     Section 627.8405, Florida Statutes, prohibits the collection or remittance of dues, assessments, fees, or other periodic payments of money for the cost of "any product not regulated under the provisions of [the Florida Insurance Code]."

62.     At all times material, the Vehicle Protection Insurance was, in whole or in part, an unregulated product under the Florida Insurance Code, and was sold and financed to Plaintiffs and the members of the proposed Class in violation of § 627.8405(1) and (3), Florida Statutes, and Florida's Surplus Lines Law.

63.     Direct General, Direct General Financial, Direct General Agency, and Certain Underwriters violated § 627.8405, Florida Statutes, by knowingly taking, receiving, and charging a premium finance charge other than that authorized by Florida law.

64.     As a direct and proximate result of the violations of § 627.8405, Florida Statutes, Plaintiffs and proposed Class are entitled to statutory damages pursuant to § 627.835, Florida Statutes.

65.     Under § 627.835, Florida Statutes, Direct General, Direct General Financial, Direct General Agency, and Certain Underwriters are responsible for the penalty of twice the entire amount of the premium finance charged and paid by Plaintiffs and the Class:

> Section 627.835  Excessive premium finance charge; penalty.
>
> **Any person, premium finance company, _or other_ _legal_ _entity_ who or which knowingly takes, receives, reserves, or charges a premium finance charge other than that authorized by this part** shall thereby forfeit the entire premium finance charge . . . and any person who has paid such unlawful finance charge may personally . . ., recover **from _such_ person, premium finance company, _or legal_ _entity_** twice the entire amount of the premium finance charge so paid.

66.     Pursuant to § 627.835, Florida Statutes, Plaintiffs and the proposed Class are entitled to pursue Direct General, Direct General Financial, Direct General Agency, and Certain Underwriters jointly and severally for the statutory penalties.

67.     Plaintiffs have retained undersigned counsel to prosecute this action and are entitled to recovery of their reasonable attorneys' fees under §§ 627.428 and 57.105(7), Florida Statutes.

## COUNT II
### Declaratory Relief
### (All Defendants)

68.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 58 above.

69.     This is an action for declaratory relief pursuant to Chapter 86, Florida Statutes, brought by Plaintiffs and the proposed Class against the Defendants.

70.     Sections 626.915 and 626.916 of the Florida Statutes provide, among other things, that surplus lines insurance policies may not be issued if such coverage is procurable in the admitted insurance market.  The statute imposes a good faith obligation for producing agents to diligently attempt to procure such coverage (or portions of the coverage) through the admitted market, and the surplus lines agent must verify that a diligent effort has been made.  Otherwise the policies that are issued are not issued pursuant to the applicable surplus lines insurance statutes, are deemed unauthorized insurance products, and are not regulated under the Florida Insurance Code.

71.     Moreover, Defendants have not conducted a diligent effort in attempting to procure coverage or verify that a diligent effort has been made.  Moreover, the coverage provided by the Vehicle Protection Insurance bought by Plaintiffs and the proposed Class was procurable in the admitted insurance market.  As such, the Vehicle Protection Insurance bought by Plaintiffs and the proposed Class is not eligible for export under Florida law, was not issued pursuant to applicable surplus lines insurance law, and is otherwise not regulated under the Florida Insurance Code.  Consequently, the Vehicle Protection Insurance is an unauthorized insurance product under Florida law.

72.     Moreover, the Vehicle Protection Insurance policy did not contain required language under Florida law and, as such, the policy is not eligible for export under or issued in compliance with the Florida Surplus Lines law.

73.     Moreover, Certain Underwriters are not eligible surplus lines insurers under § 626.918, Florida Statutes.

74.     Because the Vehicle Protection Insurance was not issued in compliance with the provisions of Florida's Surplus Lines Law, §§ 626.913 *et seq.*, Florida Statutes, the Vehicle Protection Insurance that was underwritten by Certain Underwriters must comply with the entirety of Chapter 627 of the Florida Statutes regarding rates and forms, including filing them for approval.

75.     Certain Underwriters failed to submit its rates and forms and, consequently, none of the rates or forms have been approved or regulated by the Florida Office of Insurance Regulation.

76.     Moreover, the Vehicle Protection Insurance provides essentially worthless insurance coverage.  Among other things, the policy provides hospital coverage and ambulance coverage that is applied on an excess basis.  In Florida, however, every driver is required to purchase personal injury protection no-fault insurance coverage, which requires that pays the medical benefits that include hospital and ambulance expenses.  Accordingly, this coverage in the Vehicle Protection Insurance policies is in excess of coverage that is already required and, therefore, will never be utilized.  Second, the rental coverage for vehicle breakdown is not an insurance product at all because such services normally provided by "automobile clubs."  Accordingly, this policy is unconscionable, illusory, and should be declared void or unenforceable.  Moreover, the worthless nature of this policy is not known to the insured until well after the insurance transaction takes place as the policy is not issued until well after the insurance is purchased.

77.     A bona fide present controversy exists between Plaintiffs and the proposed Class and Defendants regarding the proper interpretation and application of Florida law and the parties' respective rights and obligations thereunder.  Plaintiffs and the proposed Class contend

that, based on the violations of Florida law set forth above, the Court should (a) declare that (i) the Vehicle Protection Insurance underwritten by Certain Underwriters is unauthorized insurance, (ii) the Vehicle Protection Insurance underwritten by Certain Underwriters must comply with §§ 627.062 and 627.410, Florida Statutes, regarding its forms and rates, (iii) the Vehicle Protection Insurance is not regulated under the Florida Insurance Code, (iv) the Vehicle Protection Insurance is void, illusory and/or unenforceable, and (iv) the Vehicle Protection Insurance is an unconscionable contract, and (b) grant any and all relief that the Court deems supplemental to this declaratory relief.

78.     The rights, status, or other equitable or legal relations of the parties are affected by the Florida Statutes cited herein.  Accordingly, pursuant to § 86.021, Florida Statutes, Plaintiffs and the proposed Class may have determined any question of construction or validity arising under those statutes or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.

79.     Plaintiffs and the proposed Class are in doubt concerning their rights, and a bona fide present controversy exists between Plaintiff, the proposed Class, and Defendants regarding the proper interpretation of Florida Statutes cited herein, and there is a bona fide, actual, present, and practical need among the parties for a judicial declaration of such immunities, powers, privileges, or rights.

80.     Plaintiffs have retained undersigned counsel to prosecute this action and are entitled to recover their reasonable attorneys' fees and costs under §§ 627.428 and 57.105(7) of the Florida Statutes.

### COUNT III
### Common Law Restitution
### (All Defendants)

81.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 58, and 70 through 80 above.

82.     This is an action by Plaintiffs and the proposed Class against the Defendants for common law restitution.

83.     In procuring the Vehicle Protection Insurance policies with Plaintiffs and the proposed Class, the Defendants violated Florida's public policy that protects consumers from Defendants' unlawful acts, as alleged herein.

84.     In procuring such contracts, Defendants violated Florida Statutes, including, but not limited to, §§ 627.8405, 626.915, 626.916, 626.924, 627.062, 627.0651, and 627.410, Florida Statutes, as alleged herein.

85.     These statutes were enacted in the public interest to protect consumers, such as Plaintiffs and the proposed Class and, therefore, represent a part of Florida's public policy and are written into every insurance policy.

86.     Plaintiffs and the proposed Class were innocent parties to the purchase of the Vehicle Protection Insurance and were not in *pari delicto* with Defendants in their procurement of such contracts in violation of Florida Statutes and Florida's public policy.

87.     As a result of Defendants' violations of Florida law, the Vehicle Protection Insurance for Plaintiffs and the proposed Class are rendered void *ab initio* and unenforceable under Florida's century-old illegality doctrine.   The policies are also rendered void *ab initio* because they are essentially worthless, illusory, and unconscionable.

88.     Defendants are vicariously liable for the acts of their agents under the common law doctrine of respondeat superior.

89.     Defendants received payments made by Plaintiffs and the proposed Class under the illegal and void contracts at issue, which resulted from Defendants' violations of Florida law.

90.     Defendants are required to disgorge and make full restitution to Plaintiffs and the proposed Class of all sums of money paid to them, without any set-offs.

91.     Plaintiffs have retained undersigned counsel to prosecute this action and are entitled to recovery of their reasonable attorneys' fees under §§ 627.428 and 57.105(7), Florida Statutes.

**COUNT IV**
**Breach of Contract**
**(Certain Underwriters)**

92.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 58, and 70 through 91 above.

93.     This is an action for breach of contract against Certain Underwriters.

94.     According to the stated terms of the Lemy Policy and the Hill Policy, Certain Underwriters issued the policies "pursuant to applicable state surplus lines insurance statutes."

95.     Because the Vehicle Protection Insurance provided in the Lemy Policy, the Hill Policy, and the policies of the proposed Class were not issued pursuant to the applicable insurance statutes as alleged, Certain Underwriters materially breached and defaulted under the terms of these policies.

96.     As part of the sales process, the Vehicle Protection Insurance was sold, by Certain Underwriters agents, as "valuable insurance coverage for just pennies a day."   These

representations and warranties became part of the insurance policy. Certain Underwriters, however, breached this promise because the Vehicle Protection Insurance is not valuable insurance coverage.

97.     Moreover, insurance policies issued in Florida, including the policies in question, adopt and incorporate the provisions of the Florida Statutes and the Florida Administrative Code governing the insurance industry in this state. As discussed throughout this Complaint, Certain Underwriters and its agents have violated numerous Florida Statutes and, accordingly, Certain Underwriters through its own actions or based on the actions of its agents has breached the Lemy Policy, the Hill Policy, and the policies of all those similarly situated.

98.     As a direct and proximate result of Certain Underwriters' breach of and default under the Lemy Policy and the Hill Policy, Plaintiffs and the members of the proposed Class have been, and will continue to be, damaged.

99.     Under §§ 627.428 and 57.105(7), Florida Statutes, Plaintiffs and the members of the proposed Class are entitled to recover from Certain Underwriters their reasonable expenses incurred in prosecuting this action, including, without limitation, attorneys' fees and costs.

**COUNT V**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Certain Underwriters)**

100.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 58, and 70 through 99 above.

101.    This is an action for breach of the implied covenant of good faith and fair dealing against Certain Underwriters.

102.    Certain Underwriters entered into the Lemy Policy with Lemy and entered into the Hill Policy with Hill, which Certain Underwriters breached because the Vehicle Protection

Insurance provided in the policies are not issued in accordance with Florida law and are not valuable insurance.

103.    Moreover, Certain Underwriters, individually and through its agents, attempted to sell the Vehicle Protection Insurance policy through the surplus lines market in order to skirt Florida's strict regulatory environment that is designed to protect persons like Hill, Lemy, and the proposed Class.  As a result, through its conscious and deliberate act of affecting the Vehicle Protection Insurance, which is not in compliance with Florida law, Certain Underwriters, individually and through its agents, has failed to discharge its contractual obligations under the Lemy Policy, the Hill Policy, and the policies of all those similarly situated in a good faith manner and with fair dealing.  Such conduct unfairly frustrates the purpose of the policies and disappoints the contractual expectations of Plaintiffs and the proposed Class.  It also resulted in Hill, Lemy and the proposed Class purchasing unregulated and worthless insurance that was financed at an additional cost.

104.    As a direct and proximate result of Certain Underwriters' breach of and default under the Lemy Policy and the Hill Policy, Plaintiffs and the members of the proposed Class have been, and will continue to be, damaged.

105.    Under §§ 627.428 and 57.105(7), Florida Statutes, Plaintiffs and the members of the proposed Class are entitled to recover from Certain Underwriters their reasonable expenses incurred in prosecuting this action, including, without limitation, attorneys' fees and costs.

## COUNT VI
### Unjust Enrichment
### (Certain Underwriters)

106.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 58, and 70 through 80 above.

107. This is an action for unjust enrichment against Certain Underwriters and is brought in the alternative to Counts IV and V.

108. By paying premiums for unregulated, valueless insurance coverage, Plaintiffs and the proposed Class have conferred benefits on Certain Underwriters.

109. Certain Underwriters have knowledge that Plaintiffs and the proposed Class have paid premiums for unregulated, valueless insurance coverage.

110. Certain Underwriters voluntarily accepted and retained the benefits conferred upon them by Plaintiffs and the proposed Class.

111. Because the Vehicle Protection Insurance lacks value and is not regulated under the Florida Insurance Code, it would be inequitable for Certain Underwriters to retain the premiums that Plaintiffs and the proposed Class have conferred on them, unless Certain Underwriters pay Plaintiffs and others similarly situated the value of the benefits conferred.

<u>**COUNT VII**</u>
**Unjust Enrichment**
**(Direct General, Direct General Insurance Agency, and Direct General Financial)**

112. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 58, and 70 through 80 above.

113. This is an action for unjust enrichment against Direct General, Direct General Insurance Agency, and Direct General Financial.

114. By (a) paying premiums (which Direct General, Direct General Insurance Agency and/or Direct General Financial partly retained) for coverage that did not comply with Florida law, (b) paying premiums for an unconscionable insurance product that has little to no value, and (c) paying unlawful finance charges, Plaintiffs and the proposed Class have conferred benefits on Direct General, Direct General Insurance Agency, and Direct General Financial.

115.    Direct General, Direct General Insurance Agency, and Direct General Financial have knowledge that Plaintiffs and the proposed Class have paid them premiums for (a) unregulated, valueless insurance coverage, and (b) unlawful finance charges.

116.    Direct General, Direct General Insurance Agency, and Direct General Financial voluntarily accepted and retained the benefits conferred upon Plaintiffs and the proposed Class.

117.    Because the Vehicle Protection Insurance lacks value and does not comply with the Florida Insurance Code, it would be inequitable for Direct General, Direct General Insurance Agency, and Direct General Financial to retain the premiums and finance charges that Plaintiffs and the proposed Class have conferred on them, unless Direct General, Direct General Insurance Agency, and Direct General Financial pay Plaintiffs and the Class the value of the benefits conferred.

**COUNT VIII**
**Unjust Enrichment**
**(Nation Safe Defendants)**

118.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 58, and 70 through 80 above.

119.    This is an action for unjust enrichment against the Nation Safe Defendants, which includes Nation Motor Club, NIU, NAB, Nation Safe Drivers, and NSD Group.

120.    By (a) paying premiums (which the Nation Safe Defendants partly retained) for coverage that did not comply with Florida law, (b) paying premiums for an unconscionable insurance product that has little to no value, (c) paying unlawful finance charges, and (d) paying for servicing claims and/or the policies at issue in this matter, Plaintiffs and the proposed Class have conferred benefits on the Nation Safe Defendants.

121.    The Nation Safe Defendants have knowledge that Plaintiffs and the proposed

Class have paid premiums for unregulated, valueless insurance coverage.

122. The Nation Safe Defendants voluntarily accepted and retained the benefits conferred upon them by Plaintiffs and the proposed Class.

123. Because the Vehicle Protection Insurance lacks value and does not comply with the Florida Insurance Code, it would be inequitable for the Nation Safe Defendants to retain the benefits conferred upon them by Plaintiffs and the proposed Class, unless the Nation Safe Defendants pay Plaintiffs and others similarly situated the value of the benefits conferred.

**COUNT IX**
**Unjust Enrichment**
**(Kalmanson Agency)**

124. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 58, and 70 through 80 above.

125. This is an action for unjust enrichment against Kalmanson Agency.

126. By (a) paying premiums (which Kalmanson Agency partly retained) for coverage that did not comply with Florida law, (b) paying premiums for an unconscionable insurance product that has little to no value, and (c) paying unlawful finance charges, Plaintiffs and the proposed Class have conferred benefits on Kalmanson Agency.

127. Kalmanson Agency has knowledge that Plaintiffs and the proposed Class have paid it premiums for unregulated, valueless insurance coverage.

128. Kalmanson Agency voluntarily accepted and retained the benefits conferred upon it by Plaintiffs and the proposed Class.

129. Because the Vehicle Protection Insurance lacks value and does not comply with the Florida Insurance Code, it would be inequitable for Kalmanson Agency to retain the

premiums that Plaintiffs and the proposed Class have conferred on them, unless Kalmanson Agency pays Plaintiffs and others similarly situated the value of the benefits conferred.

**COUNT X**
**Unjust Enrichment**
**(Kalmanson)**

130.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 58, and 70 through 80 above.

131.     This is an action for unjust enrichment against Kalmanson, individually.

132.     By (a) paying premiums (which Kalmanson partly retained) for coverage that did not comply with Florida law, (b) paying premiums for an unconscionable insurance product that has little to no value, and (c) paying unlawful finance charges, Plaintiffs and the proposed Class have conferred benefits on Kalmanson.

133.     Kalmanson has knowledge that Plaintiffs and the proposed Class have paid premiums for unregulated, valueless insurance coverage.

134.     Kalmanson voluntarily accepted and retained the benefits conferred upon him by Plaintiffs and the proposed Class.

135.     Because the Vehicle Protection Insurance lacks value and does not comply with the Florida Insurance Code, it would be inequitable for Kalmanson to retain the benefits conferred upon him by Plaintiffs and the proposed Class, unless Kalmanson pays Plaintiffs and others similarly situated the value of the benefits conferred.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray as follows:

a.  for an order that this action is properly maintainable under Rule 1.220(b)(2) and (b)(3), Florida Rules of Civil Procedure, and appointing Plaintiffs to represent the Class;

b.  for an order appointing Plaintiffs' law firms listed below as class counsel;

c.  for an order approving Plaintiffs as class representatives, along with such other persons who the Court may permit to join as class representatives;

d.  for an order requiring reasonable and adequate notice to be given to prospective class members following certification;

e.  for judgment under Count I on behalf of Plaintiffs and the proposed Class and against Direct General, Direct General Insurance Agency, Direct General Financial, and Certain Underwriters for statutory damages due to their violations of § 627.8405, Florida Statutes, and reasonable attorneys' fees and costs under §§ 627.428 and 57.105(7), Florida Statutes;

f.  for declaratory relief under Count II against Defendants to (a) declare that (i) the Vehicle Protection insurance underwritten by Certain Underwriters is unauthorized insurance, (ii) the Vehicle Protection Insurance underwritten by Certain Underwriters must comply with §§ 627.062 and 627.410, Florida Statutes, regarding its forms and rates, (iii) the Vehicle Protection Insurance is not regulated under the Florida Insurance Code; (iv) the Vehicle Protection Insurance is void, illusory, and/or unenforceable, and (v) the Vehicle Protection Insurance is

an unconscionable contract, and (b) grant any and all relief that the Court deems supplemental to this declaratory relief;

g.  for judgment under Count III against Defendants and in favor of Plaintiffs and the proposed Class for restitution of all amounts paid to Defendants, without set-off, by Plaintiffs and the proposed Class as a result of Defendants' unlawful conduct, and reasonable attorneys' fees and costs under §§ 627.428 and 57.105(7), Florida Statutes;

h.  for judgment under Count IV against Certain Underwriters and in favor of Plaintiffs and the proposed Class for damages, attorneys' fees, and costs, as provided under §§ 627.428 and 57.105(7), Florida Statutes;

i.  for judgment under Count V against Certain Underwriters and in favor of Plaintiffs and the proposed Class for damages, attorneys' fees, and costs, as provided under §§ 627.428 and 57.105(7), Florida Statutes;

j.  for judgment under Count VI against Certain Underwriters and in favor of Plaintiffs and the proposed Class for damages;

k.  for judgment under Count VII against Direct General, Direct General Insurance Agency, and Direct General Financial and in favor of Plaintiffs and the proposed Class for damages;

l.  for judgment under Count VIII against the Nation Safe Defendants and in favor of Plaintiffs and the proposed Class for damages;

m.  for judgment under Count IX against Kalmanson Agency and in favor of Plaintiffs and the proposed Class for damages;

n.  for judgment under Count X against Kalmanson and in favor of Plaintiffs and the proposed Class for damages; and

o.  for such other and further relief and supplemental relief as this Court deems just and proper and is necessary to protect the interests of Plaintiffs and the proposed Class.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of all of those similarly situated who may join this action, demand a trial by jury against Defendants.

Respectfully submitted,

J. Daniel Clark, Esq.          FBN 0106471
CLARK & MARTINO, P.A.
3407 W. Kennedy Boulevard
Tampa, FL 33609
(813) 879-0700
(813) 879-5498 (Facsimile)

and

Kerry C. McGuinn, Jr., Esq.   FBN 982644
RYWANT, ALVAREZ, JONES, RUSSO,
 & GUYTON, P.A.
109 North Brush Street, Suite 500
Tampa, FL  33602
(813) 229-7007
(813) 223-6544 (Facsimile)

and

Edward H. Zebersky, Esq.     FBN 908370
ZEBERSKY & PAYNE, LLP
4000 Hollywood Blvd. Suite 675S
Hollywood, FL 33021
(954) 989-6333
(954) 989-7781 (Facsimile)

and

Kenneth G. Turkel, Esq.        FBN 867233
BAJO CUVA COHEN & TURKEL, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida  33602
(813) 443-2199
(813) 443-2193 (Facsimile)

**Attorneys For Plaintiffs**

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of foregoing document was served upon the following parties by U.S. Mail on this 2rd day of November, 2011: **Richard S. Davis, Esq.**, Foley & Lardner, LLP, One Biscayne Tower, 2 South Biscayne Boulevard, Suite 1900, Miami, FL 33131; **James A. McKee, Esq.**, Foley & Lardner, 106 East College Avenue, Suite 900, Tallahassee, FL 32301-7732; **Patricia A. McLean, Esq.** and **Bridgett Remington, Esq.**, Phelps Dunbar, LLP, 100 S. Ashley Drive, Suite 1900, Tampa, FL 33602-5311; **Lewis E. Hassett, Esq., Larry Kunin, Esq.,** and **Ben Vitale, Esq.,** Morris, Manning & Martin, LLP, 1600 Atlanta Financial Center, 3343 Peachtree Road, Atlanta, GA 30326; **Jeffrey M. Goodis, Esq.**, Thompson Goodis, 700 Central Avenue, Suite 500, St. Petersburg, FL 33701.

_____

J. Daniel Clark, Esq.

# EXHIBIT 1

# INSURANCE PREMIUM FINANCING
## DISCLOSURE FORM

Florida law requires the owner of a motor vehicle to maintain Personal Injury Protection and Property Damage liability insurance. Under certain circumstances as provided in Chapter 324, Florida Statutes, additional liability insurance may be required for Bodily Injury liability. Also, additional insurance is usually required by a lienholder of a financed vehicle. Florida law does not require other insurance. The direct or indirect premium financing of auto club memberships and other non-insurance products is prohibited by state law.

Insurance you are **REQUIRED** by law to have:

| | |
|---|---|
| Personal Injury Protection (PIP) | $1,047.00 |
| Property Damage Liability (PD) | $526.00 |

Other insurance which you **MAY** be required by law to have:

| | |
|---|---|
| Bodily Injury (if an SR-22 has been issued) | $0.00 |

**OPTIONAL** insurance coverage:

| | |
|---|---|
| Bodily Injury (if an SR-22 has NOT been issued) | $0.00 |
| Medical Payments | $0.00 |
| Uninsured Motorist | $0.00 |
| Comprehensive | $0.00 |
| Collision | $0.00 |
| Accidental Death | $0.00 |
| Towing | $0.00 |
| Rental | $245.00 |
| Life Insurance | $0.00 |
| Accident Medical Plan | $170.00 |
| Vehicle Protection Insurance | |
| Life Policy Fee | $10.00 |
| SR-22 Fee | $0.00 |
| Emergency Assessment, if applicable | $17.58 |
| Policy Fee, if applicable | $25.00 |

| | |
|---|---|
| **TOTAL INSURANCE PREMIUMS** | $2,040.68 |
| Document Stamp Tax, if applicable | $6.30 |
| Less Down Payment applied | $281.64 |
| **AMOUNT FINANCED** (loaned to you) | $1,765.34 |

I, Gardith S. Lemy, have read the above and understand the coverages I am buying and how much they cost.

Signature of Named Insured _____     Date 3/19/08

EXHIBIT

1

D14-1182 (3/99)
0245 (03/06)

FLORIDA

DGFS Production -5/26/2009 Depo000048

*Direct General Financial Services, Inc.*
1281 Murfreesboro Road, Nashville, TN 37217
(800) 627-8006 or (888) 611-5301 (Español)

PREMIUM FINANCE AGREEMENT
State of Florida
Agreement Number:   8B9FL3B04D14

MONTHLY Pay Plan

INSURED NAME & ADDRESS:
Gardith S. Lamy

Loss Payee Name and Address:

AGENT NAME & ADDRESS
Direct General Ins Agency
9340 North Florida Ave
Suite B
Tampa, FL 336127825
813-935-1037

| Policy/Quote NO. | Date | Term | Type of Policy | Insurance Company | Premium |
|---|---|---|---|---|---|
| FLAD239004525 | 03/19/2008 | 12 | AUTO | Direct General Insurance Co. | 1,913.88 |
| FLOD239004525 | 03/19/2008 | 12 | Life | Direct General Life Insurance Company | 255.00 |
| FLED239004525 | 03/19/2008 | 12 | VPI | Lloyd's of London | 171.70 |

Itemization of Amount Financed

| | | |
|---|---|---|
| Cash Price (Total Premium) | $ | 2,040.83 |
| Florida Documentary Stamp Tax | $ | 6.30 |
| Less Total Down Payment (Due Now) | $ | 281.64 |
| Total Amount Financed (Paid to others on your behalf) | $ | 1,765.34 |
| Prepaid Finance Charge (if any) | $ | 28.00 |

## TRUTH IN LENDING DISCLOSURES

| Amount Financed The amount of credit provided to you on your behalf. | FINANCE CHARGE The dollar amount the credit will cost you. | Total of Payments The amount you will have paid after you have made all payments as scheduled | Total Sale Price The total cost of your purchase on credit, including your down payment of | ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. |
|---|---|---|---|---|
| $ 1,765.34 | $ 211.53 | $ 1,976.87 | $ 2,258.51 | 281.64 | 99.99% |

### Payment Schedule

| Down Payment | Down Payment Amount | Number of Installments | Amount of Installment Payment |
|---|---|---|---|
| Due Now | $ 281.64 | 11 | $ 179.72 |

| | | | | | |
|---|---|---|---|---|---|
| Payment 1 due | 04/19/2008 | Payment 4 due | 07/19/2008 | Payment 7 due | 10/19/2008 | Payment 10 due | 01/19/2009 |
| Payment 2 due | 05/19/2008 | Payment 5 due | 08/19/2008 | Payment 8 due | 11/19/2008 | Payment 11 due | 02/19/2009 |
| Payment 3 due | 06/19/2008 | Payment 6 due | 09/19/2008 | Payment 9 due | 12/19/2008 | Payment 12 due | |

SECURITY: You are giving a security interest in unearned premium on the insurance policy being purchased.
LATE CHARGE: If a payment is 5 days or more late, you will be charged a late charge, not to exceed $10.00.
PREPAYMENT: If you pay early, you may be entitled to a refund of part of the finance charge.
CONTRACT PROVISIONS: See the contract provisions on the remaining page(s) of this agreement for additional information about non-payment, default, the right to acceleration the maturity of the obligation, prepayment rebates and penalties.

Insured Initials    Date:    Mar 19, 2008    Certificate of Registration # 621564497

* The Florida Documentary Stamp Tax indicated above is required by law and will be paid directly to the Department of Revenue.
470-001

DGFS FL 004 (Rev 12/07)

DGFS Production -5/28/2009 Depo000044

*Direct General Financial Services, Inc.*                                            PREMIUM FINANCE AGREEMENT
1281 Murfreesboro Road, Nashville, TN 37217                                                        State of Florida
(800) 627-8006 or (888)611-8301 (Español)   Jardith S. Lemy        889FL3901D14

[INSURED NAME & AGREEMENT NO]

**DEFINITIONS:** In this agreement, the word "agreement" means the Premium Finance Agreement, including any renewals thereof. The words "insurance policy" or "policy" mean the insurance policy or policies which are financed under the terms of this agreement. The words "you", "yours", "borrower" or "insured" mean you and your spouse (if a resident of your household at the time of the signing of this agreement or if a named or listed insured under the insurance policy). You and your spouse are jointly and severally liable for all amounts owing hereunder. The words "we", "us", "our", or "DGFS" mean DIRECT GENERAL FINANCIAL SERVICES, INC., the lender under this agreement. Singular words shall be deemed plural and vice versa whenever consistent with the context of this agreement.

**PROMISE TO PAY:** In consideration of the premium payments to be made by DGFS, you hereby promise to pay to DGFS the Total Sales Price disclosed on page one of this agreement plus the fees and charges as provided in this agreement.

**ADDITIONAL CHARGE:** The finance charge disclosed in this agreement includes an additional charge of $20.00, which additional charge is fully earned and need not be refunded upon prepayment.

**CHECK AND EFT REPRESENTMENT POLICY:** If your down payment or any installment is paid with a check that is returned or dishonored for any reason or if there are insufficient funds to cover an automatic electronic debit, you expressly authorize and agree that DGFS or an agent designated by it, may at its sole option, electronically represent or retransmit your check or electronic debit as the case may be and debit your bank account for the payment amount plus any applicable fees as described in this agreement. DGFS is under no obligation to represent a dishonored check or retransmit an electronic debit. However, if DGFS exercises its option, you acknowledge that you will be in default under this agreement until such time as your account with us is brought to a current status. This use of a check or your authorization for electronic debit for payment is your acknowledgement and acceptance of this policy and its terms. DGFS reserves all rights and remedies available to it under this agreement.

**INSUFFICIENT FUNDS CHARGE:** If you have insufficient funds to cover any payment check or automatic electronic debit or if payment is dishonored by a bank or financial institution for any reason, you may be charged an NSF charge of $15.00.

**PAYMENTS:** Payments should be made to Direct General Financial Services, Inc., P.O. Box 17905, Nashville, TN 37217, by telephone at 800-627-8006 or online at www.directgeneral.com. Payments you make to an insurance agent, insurance company, or any other party other than DGFS are not considered payment to DGFS until the date received by us. Payments made to anyone other than to us could cause otherwise timely payments to be late and could result in the cancellation of your insurance.

**POWER OF ATTORNEY – NOTICE TO INSURANCE COMPANY:** You hereby appointed DGFS as your attorney-in-fact to cancel the insurance policy financed under this agreement for your nonpayment as required herein. This power of attorney is coupled with an interest and cannot be revoked to the extent of the authority granted herein. You understand that if DGFS cancels your policy due to your default, DGFS is entitled to collect and receive any unearned premium proceeds payable from the insurance company under the policy and to apply the same to the unpaid balance hereunder.

**AGREEMENT TO ARBITRATE. READ CAREFULLY.** This provision provides that either you or we can require that any controversy or dispute concerning this agreement be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to a jury and the right to participate in a class action or similar proceeding. You and we hereby agree that all disputes, claims and controversies of every kind and whatever nature, including, but not limited to, tort and contract claims, claims based upon any federal, state, or local statute, law, consumer protection act, case, common law, order, ordinance or regulations, and claims of any type arising before or at the time of entering into, during the term of, or upon or after the expiration or termination of this agreement, and the issue of arbitrability, and all other issues shall be resolved by final and binding arbitration. Either you or we may demand without the other's consent that any matter referenced herein be submitted to mandatory, binding arbitration. In such an event, venue shall be in the Florida county in which such other party resides or has a place of business, or if such other party has no residence or place of business in Florida, then in any Florida county. An arbitrator shall be selected by agreement between the parties. If the parties cannot agree on an arbitrator, either party may request a judge of a court of record having competent jurisdiction to designate three potential arbitrators. The parties shall then agree on one of the three so designated. Judgment upon the award may be entered in any court having jurisdiction over the matter. This arbitration provision shall be governed by, and enforceable under, the Federal Arbitration Act and (to the extent state law is applicable) the state law governing this agreement. If any portion of this arbitration provision is deemed invalid or unenforceable, it shall not invalidate the remaining portions of the arbitration provision. NO CLASS ACTIONS / NO JOINDER OF PARTIES: Disputes under this Agreement may not be, (A) resolved on a class-wide basis, (B) joined with another lawsuit, or (C) joined in an arbitration with a dispute of any other person. The arbitrator may not award any claims for awards for punitive or exemplary damages, attorney fees or any damages that are barred by this Agreement, unless such damages are expressly authorized by a relevant statute.

NOTICE:
(1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under this law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge. THIS AGREEMENT CONSISTS OF MULTIPLE PAGES. PLEASE READ ALL PAGES BEFORE SIGNING.

X _____                          X _____
BORROWER'S SIGNATURE                                   BORROWER'S SIGNATURE
Date _____                                   Date _____

DGFS-FL 001 (Rev 12-07)

DGFS Production - 5/28/2009 Depo0000046

## REMAINING PROVISIONS OF YOUR PREMIUM FINANCE AGREEMENT

You and we agree to the following additional terms:

**CANCELLATION:** If you fail to make your payments at the time and in the amounts provided for in this agreement, we may cancel the insurance policy as provided herein. Before such cancellation occurs, we will mail to you a written notice giving you not less than ten (10) days notice of our intent to cancel the policy unless the default is cured. If you do not cure the default within the time period stated in the notice, your policy will be canceled on the effective date stated in the notice. In such an event, we will send a notice of cancellation to the insurance company and mail a copy of such notice to you at your last known address as set forth in this agreement or as thereafter provided in writing to us by you. In the event your insurance policy is canceled for any reason, we shall be entitled to receive the return of unearned premiums and loss payments payable under the policy and credit such amounts to any outstanding balance owed to us by you. If the proceeds are insufficient to pay the amount due from you, you remain liable for and agree to pay the deficiency. If the proceeds received from the insurance company are in excess of the amount owed to us by you, we will refund to you the excess amount. However, you acknowledge and agree that DGFS is entitled to retain amounts less than $1.00.

**ACCELERATION:** In the event you fail to cure a default within the time period prescribed in the notice, the full amount then owing under this agreement, less credit for any unearned Finance Charges, as computed by us, shall automatically become immediately due and payable without any notice or demand, time being of the essence. You agree that any payment received from you at any time after DGFS has sent a notice of cancellation to the insurance company, will be credited against the indebtedness owed by you. However, our acceptance of such payments shall not constitute a waiver of any default under this agreement, nor shall it constitute a reinstatement of your policy.

**REINSTATEMENT:** If you make a payment after your policy has been canceled by DGFS and that payment brings your account to a current status, we may, at our sole option, request reinstatement of your policy from your insurance company. You agree that your making such a payment represents your desire to maintain continuous insurance coverage and, in the event we request reinstatement of your policy, you understand that our request is intended to reinstate your policy without a lapse or break in coverage. You understand that prior to determining whether you are eligible for such reinstatement, your insurance company may require you to represent to it that you have not incurred a loss for which coverage may be claimed under your policy. Your insurance company, however, is not required to honor our request for reinstatement and may not be able to reinstate your policy with a lapse or a break in coverage. You understand and agree that we shall not be liable if your insurance company does not reinstate your policy or reinstates your policy with a lapse in coverage.

**PREPAYMENT:** You have the right at any time to prepay the amounts due hereunder in full or in any one or more installments without penalty. Upon prepayment in full, you may be entitled to a refund of the unearned Finance Charge, computed according to the relationship that the sum of the periodic balances determined after the month prepayment is made bears to the sum of all periodic balances under the schedule of installments in this agreement. A prepayment made in any amount less than the full amount of the unpaid balance due hereunder shall not entitle you to any reduction in the Finance Charge or to any rebate whatsoever on account of any such partial prepayment. No refund of less than $1.00 shall be made.

**AMENDMENT:** Should additional premium become due as a result of a change in your policy or adjustments to your premium made by you or your insurance company, you hereby grant DGFS the authority and instruct DGFS to pay the additional premium on your behalf. You authorize and DGFS agrees to add such amounts and applicable interest to the unpaid balance under this agreement. DGFS shall furnish you a memorandum of amendment reflecting the changes made to this agreement. You agree to pay all sums as reflected on the memorandum of amendment and any additional amount of whether the change or adjustment was done by you or the insurance company. In the event of default in payment of the additional down payment, DGFS has the right to implement cancellation procedures as provided for in the above section titled "CANCELLATION".

**RENEWAL:** This agreement may be renewed by amendment. If you renew the policy that is financed under this agreement, we may, at our sole option, furnish you a memorandum of amendment reflecting terms for renewal of this agreement and instructions for renewal. This agreement will not be renewed unless you and DGFS each agree to the renewal.

**SECURITY:** As security for payment of all amounts owing hereunder, you hereby (a) acknowledge that, in accordance with applicable law, DGFS has a security interest in all unearned premiums which may become payable under any and all of the policy or policies, including any renewals thereof, and (b) grant to DGFS a continuing security interest in all unearned premiums which may become payable under any and all of the policy or policies, whether now existing or hereafter acquired or arising. DGFS may pursue any and all legal and equitable remedies available to it arising out of such security interest. In connection with such security interests, you hereby appoint DGFS to be your attorney-in-fact with full power and sole authority to effect cancellation of the policies listed in this agreement in the event of an uncured default and to collect and receive unearned premiums which may become payable under said policies.

**INTEREST:** Notwithstanding anything to the contrary herein, under no circumstances shall you have to pay more interest than is allowed under applicable law for this type of transaction, and if DGFS inadvertently contracts for, charges, or receives more interest than permitted by applicable law, DGFS will either refund the excess to you or apply it to the unpaid balance due hereunder.

**ACCEPTANCE:** You agree that this agreement shall not be effective until accepted by us at our corporate headquarters. Executed agreements are accepted unless rejected by us within ten (10) days of receipt.

**ASSIGNMENT:** You represent that the insurance policy has been issued to you and is in full force and effect, and that there has been no assignment of, and that you will not assign, any interest in the insurance policy except for the assignment to DGFS as provided herein, and except for the interest of mortgagees and loss payees, without the written consent of DGFS; but if such approved assignment by you is made, this agreement shall inure to the benefit of and be binding on such assignee. You agree that DGFS may assign this agreement, and in such event, this agreement shall inure to the benefit of and be binding on such assignees.

**DGFS' ROLE:** You agree that we are a lender and not an insurance company and we assume no liability in any event or under any condition as an insurer.

**ATTORNEY FEES:** If a default occurs and this agreement is referred to collection, you agree to pay all reasonable collection and attorney fees up to 20% of the amount due and payable under this agreement if it is referred for collection to an attorney who is not a salaried employee of DGFS.

**FEDERAL EQUAL CREDIT OPPORTUNITY ACT:** The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**SEVERABILITY:** If one or more of the provisions of this agreement is unenforceable, void, or invalid, the enforceability, validity and legality of the remaining provisions of this agreement shall not be affected or impaired thereby.

**GOVERNING LAW:** Except as otherwise described in the Agreement to Arbitrate clause in this Agreement, you and DGFS agree that this agreement is made subject to, is governed by and will be construed under the laws of the State of Florida.

DGFS FL 001 (Rev 12/07)

DGFS Production -5/28/2009 Depo000047

# EXHIBIT 2

## INSURANCE PREMIUM FINANCING
### DISCLOSURE FORM

Florida law requires the owner of a motor vehicle to maintain Personal Injury Protection and Property Damage liability insurance. Under certain circumstances as provided in Chapter 324, Florida Statutes, additional liability insurance may be required for Bodily Injury liability. Also, additional insurance is usually required by a lienholder of a financed vehicle. Florida law does not require other insurance. The direct or indirect premium financing of auto club memberships and other non-insurance products is prohibited by state law.

Insurance you are REQUIRED by law to have:

| | |
|---|---|
| Personal Injury Protection (PIP) ................................................... | $249 |
| Property Damage Liability (PD) ................................................... | $179 |

Other insurance which you MAY be required by law to have:

| | |
|---|---|
| Bodily Injury (if an SR-22 has been issued) ................................... | $0 |

OPTIONAL insurance coverage:

| | |
|---|---|
| Bodily Injury (if an SR-22 has NOT been issued) ........................... | $0 |
| Medical Payments ......................................................................... | $0 |
| Uninsured Motorist ....................................................................... | $0 |
| Comprehensive .............................................................................. | $89 |
| Collision........................................................................................ | $337 |
| Accidental Death ........................................................................... | $0 |
| Towing........................................................................................... | $0 |
| Rental ............................................................................................ | $0 |
| Life Insurance................................................................................ | $0 |
| Accident Medical Plan................................................................... | $470 |
| Vehicle Protection Insurance........................................................ | $0 |
| Life Policy Fee .............................................................................. | $0 |
| SR-22 Fee ...................................................................................... | $11 |
| Emergency Assessment, if applicable ........................................... | $25 |
| Policy Fee, if applicable ................................................................ | |

| | |
|---|---|
| TOTAL INSURANCE PREMIUMS | $1,058 |
| Document Stamp Tax, if applicable.............................................. | $3.15 |
| Less Down Payment applied ........................................................ | $200.00 |
| AMOUNT FINANCED (loaned to you) | $863.15 |

I, Marilyn N. Hill, have read the above and understand the coverages I am buying and how much they cost.

*Marilyn N Hill*                                    1-4-2007
Signature of Named Insured                          Date

**EXHIBIT**
**2**

FLORIDA

*Direct General Financial Services, Inc.*
1281 Murfreesboro Road, Nashville, TN 37217
(800) 527-5006

**Premium Finance Agreement**
State of Florida

INSURED NAME: Marilyn N. Hill

AGREEMENT NO: 888FL128406389

## FEDERAL TRUTH IN LENDING DISCLOSURES, CONTINUED

**SECURITY:** You are giving a security interest in unearned premium on the insurance policy being purchased.

**ADDITIONAL CHARGE:** The finance charge disclosed in this agreement includes an additional charge of $20.00, which additional charge is fully earned and need not be refunded upon prepayment.

**LATE CHARGE:** If a payment is 5 days or more late, you will be charged a late charge, not to exceed $10.00.

**CHECK POLICY:** If your down payment or any installment is paid with a check that is returned or dishonored for any reason, you expressly authorize and agree that DGFS or an agent designated by it, may at its sole option, electronically re-present your check and debit your bank account for the amount of the check plus any applicable fees as described in this agreement. DGFS is under no obligation to re-present a dishonored check. However, if DGFS exercises its option to re-present your check, you acknowledge that you will be in default under this agreement until such time as your account with us is brought to a current status. DGFS reserves all rights and remedies available to it under this agreement. The use of a check for payment is your acknowledgement and acceptance of this policy and its terms.

**RETURNED CHECK CHARGE:** If any payment check is returned for insufficient funds, you will be charged an NSF check charge of $15.00.

**PREPAYMENT:** If you pay early, you may be entitled to a refund of part of the finance charge.

**PAYMENTS:** Payments should be made to Direct General Financial Services, Inc., ("DGFS") P.O. Box 17905, Nashville, TN 37217. Payments you make to an insurance agent, insurance company, or any other party other than DGFS are not considered payment to DGFS until the date received by us. Payments made to anyone other than to us could cause otherwise timely payments to be late and could result in the cancellation of your insurance.

**CONTRACT PROVISIONS:** See the contract provisions on the remaining page(s) of this agreement for additional information about non-payment, prepayment refunds and penalties and security interest.

**DEFINITIONS:** In this agreement, the word "agreement" means this Premium Finance Agreement. The words "insurance policy" or "policy" mean the insurance policy or policies which are financed under the terms of this agreement. The words "you", "yours", "borrower" or "insured" mean you and your spouse (if a resident of your household at the time of the signing of this agreement or if a named or listed insured under the insurance policy). You and your spouse are jointly and severally liable for all amounts owing hereunder. The words "we", "us", "our", or "DGFS" mean DIRECT GENERAL FINANCIAL SERVICES, INC., the lender under this agreement. Singular words shall be deemed plural and vice versa whenever consistent with the context of this agreement.

**PROMISE TO PAY:** In consideration of the premium payments to be made by DGFS, I hereby promise to pay to DGFS the Total Sales Price disclosed on page one of this agreement plus the fees and charges as provided in this agreement.

**POWER OF ATTORNEY – NOTICE TO INSURER:** You hereby appoint DGFS as your attorney-in-fact to, cancel the above listed insurance policies for nonpayment of premium. This power of attorney is coupled with an interest and cannot be revoked to the extent of the authority granted herein. You understand that if DGFS cancels your policies due to your default, DGFS is entitled to collect and receive any unearned premium proceeds payable from the insurer under these policies and to apply the same to the unpaid balance hereunder.

## NOTICE

(1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge.

THIS AGREEMENT CONSISTS OF MULTIPLE PAGES.  PLEASE READ ALL PAGES BEFORE SIGNING BELOW.

x _Marilyn J Hill_
BORROWER'S SIGNATURE                Date _1-4-2007_

X _____
BORROWER'S SIGNATURE                Date _____

DGFS FL 001 (Rev 04/03)

**Direct General Financial Services, Inc.**
1281 Murfreesboro Road, Nashville, TN 37217
(800) 627-8006 or (888) 611-5301 (Español)

**Premium Finance Agreement**
State of Florida

Agreement Number: 888FL128406388

INSURED NAME & ADDRESS:
Marilyn N. Hill

AGENT NAME & ADDRESS
Direct General Ins Agency
3375 34th Street North
Suite 100
Saint Petersburg, FL 33713
727-522-6651

Loss Payee Name and Address:

| Unit No | LienHolder | Address1 | Address2 | City | State | Zip | |
|---|---|---|---|---|---|---|---|
| 2 | GMAC | PO BOX 6104 | | COCKEYSVILLE | MD | 21030 | 6104 |

### ITEMIZATION OF AMOUNTS FINANCED

| Policy/Quote NO. | Date | Term | Type of Policy | Insurance Company | | Premium |
|---|---|---|---|---|---|---|
| FLAD128406388 | 01/10/2007 | 12 | AUTO | Direct General Insurance Co. | | 868.00 |
| FLER000003712 | 01/10/2007 | 12 | VPI | Lloyd's of London | | 172.00 |

**MONTHLY**

| | |
|---|---|
| TOTAL PREMIUM | $ 1,030.00 |
| FLORIDA DOCUMENTARY STAMP TAX | $ 3.15 |
| LESS TOTAL DOWN PAYMENT | $ 200.00 |
| TOTAL AMOUNT FINANCED | $ 883.15 |
| PREPAID FINANCE CHARGE (IF ANY) | $ 0.00 |

### FEDERAL TRUTH IN LENDING DISCLOSURES

| Amount Financed. The amount of credit provided to you on your behalf. | FINANCE CHARGE. The dollar amount the credit will cost you. | Total of Payments. The amount you will have paid after you have made all payments as scheduled. | TOTAL SALES PRICE. The total cost of your purchase on credit, including your down payment** | ANNUAL PERCENTAGE RATE. The cost of your credit as a yearly rate. |
|---|---|---|---|---|
| $ 883.15 | $ 105.13 | $ 966.28 | $ 200.00 $ 1,166.28 | 25.75% |

| Down Payment Due Now | Down Payment Amount | Number of Installments | Amount of Installment Payment |
|---|---|---|---|
| | 200.00 | 10 | 96.63 |

### PAYMENT SCHEDULE

| | | | |
|---|---|---|---|
| Payment 1 due 02/10/2007 | Payment 4 due 05/10/2007 | Payment 7 due 08/10/2007 | Payment 10 due 11/10/2007 |
| Payment 2 due 03/10/2007 | Payment 5 due 06/10/2007 | Payment 8 due 09/10/2007 | Payment 11 due |
| Payment 3 due 04/10/2007 | Payment 6 due 07/10/2007 | Payment 9 due 10/10/2007 | Payment 12 due |

** The Florida Documentary Stamp Tax indicated above is required by law and will be paid directly to the Department of Revenue. Certificate of Registration # 621664487-78-001

Issued Initials: Date: Jan 4, 2007

DGFS FL 001 (Rev 04/03)

### REMAINING PROVISIONS OF YOUR PREMIUM FINANCE AGREEMENT

You and we agree to the following additional terms:

**CANCELLATION:** If you fail to make payments at the time and in the amounts provided for in this agreement, we may cancel the insurance policy as provided herein. Before such cancellation occurs, we will mail to you a written notice giving you not less than ten (10) days notice of our intent to cancel the policy unless the default is cured. If you do not cure the default within the time period stated in the notice, your policy will be cancelled on the effective date stated in the notice. In such an event, we will send a notice of cancellation to the insurance company and mail a copy of such notice to you at your last known address as set forth in this agreement or as thereafter provided in writing to us by you. In the event your policy of insurance is cancelled for any reason, we shall be entitled to receive the return of unearned premiums and less payments payable under this policy and credit such amounts to any outstanding balance owed to us by you. If the proceeds are insufficient to pay the amount due from you, you remain liable for and agree to pay the deficiency. If the proceeds received from the insurance company are in excess of the amount owed to us by you, we will refund to you the excess amount. However, you acknowledge and agree that DGFS is entitled to retain amounts less than $1.00.

**ACCELERATION:** In the event you fail to cure a default within the time period prescribed in the notice, the full amount then owing under this agreement, less credit for any unearned Finance Charges, as computed by us, shall automatically become immediately due and payable without any notice or demand, time being of the essence hereof. You agree that any payment received from you at any time after DGFS has sent a notice of cancellation to the insurance company, will be credited against the indebtedness owed by you. However, our acceptance of such payments shall not constitute a waiver of your default under this agreement, nor shall it constitute a reinstatement of your policy.

**REINSTATEMENT:** If you make a payment after your policy has been cancelled by DGFS and that payment brings your account to a current status, we may, at our sole option, request reinstatement of your policy from your insurance company. You agree that your making such a payment will express your desire to maintain continuous insurance coverage and, in the event we request reinstatement of your policy, you understand that our request is intended to reinstate your policy without a lapse or break in coverage. You understand that prior to determining whether you are eligible for such reinstatement, your insurance company may require you to represent to it that you have not incurred a loss for which coverage may be claimed under your policy. Your insurance company, however, is not required to honor our request for reinstatement of your policy. The insurance company can deny our request completely or it may elect to reinstate your policy with a lapse or a break in coverage. You understand and agree that we shall not be liable if your insurance company does not reinstate your policy or reinstates your policy with a lapse in coverage.

**PREPAYMENT:** You have the right at any time to prepay the amounts due hereunder in full or in any one or more installments thereof without penalty. Upon prepayment in full, you may be entitled to a refund of the unearned Finance Charge, computed according to the relationship that the sum of the periodic balances determined after the month prepayment is made bears to the sum of all periodic balances under the schedule of installments in this agreement. A prepayment made in any amount less than the full amount of the unpaid balance due hereunder shall not entitle you to any reduction in the Finance Charge or to any rebate whatsoever on account of any such partial prepayment. No refund of less than $1.00 shall be made.

**AMENDMENT:** Should additional premium become due as a result of a change to your policy or adjustments to your premium by your insurance company, you hereby grant DGFS the authority and instruct DGFS to pay the additional premium on your behalf. You authorize and DGFS agrees to add such amount and applicable interest to the unpaid balance under this agreement. DGFS shall furnish you a memorandum of amendment reflecting the changes made to this agreement. You agree to pay all sums as reflected on the memorandum of amendment and any additional down payment as may be required by your insurance company or us. The additional down payment is due at the time of the change or adjustment in premium regardless of whether the change or adjustment was done by you or the insurance company. In the event of default in payment of the additional down payment, DGFS has the right to implement cancellation procedures as provided for in the above section titled "CANCELLATION."

**SECURITY:** As security for payment of all amounts owing hereunder, you hereby (a) acknowledge that, in accordance with applicable law, DGFS has a security interest in all unearned premiums which may become payable under any and all of the policy or policies, and (b) grant to DGFS a continuing security interest in all unearned premiums which may become payable under any and all of the policy or policies, whether now existing or hereafter acquired or arising. DGFS may pursue any and all legal and equitable remedies available to it arising out of such security interest. In connection with such security interest, you hereby appoint DGFS to be your attorney-in-fact with full power and sole authority to effect cancellation of the policies listed in this agreement in the event of an unearned default and to collect and receive unearned premiums which may become payable under said policies.

**INTEREST:** Notwithstanding anything to the contrary herein, under no circumstances shall you have to pay more interest than is allowed under applicable law for this type of transaction, and if DGFS inadvertently contracts for, charges, or receives more interest than permitted by applicable law, DGFS will either refund the excess to you or apply it to the unpaid balance due hereunder.

**ACCEPTANCE:** You agree that this agreement shall not be effective until accepted by us at our corporate headquarters. Executed agreements are accepted unless rejected by us within ten (10) days of receipt.

**ASSIGNMENT:** You represent that this insurance policy has been issued to you and is in full force and effect, and that there has been no assignment of, and that you will not assign, any interest in the insurance policy except for the assignment to DGFS as provided herein, and except for the interest of mortgagees and loss payees, without the consent of DGFS; but if such approved assignment by you is made, this agreement shall inure to the benefit of and be binding on such assignees. You agree that DGFS may assign this agreement, and in such event, this agreement shall inure to the benefit of and be binding on such assignee.

**DGFS' ROLE:** You agree that we are a lender and not an insurance company and we assume no liability in any event or under any condition as an insurer.

**ATTORNEY FEES:** If a default occurs and this agreement is referred for collection, you agree to pay all reasonable collection and attorney fees up to 20% of the amount due and payable under this agreement if it is referred for collection to an attorney who is not a salaried employee of DGFS.

**FEDERAL EQUAL CREDIT OPPORTUNITY ACT:** The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**SEVERABILITY:** If one or more of the provisions of this agreement is unenforceable, void, or invalid, the enforceability, validity and legality of the remaining provisions of this agreement shall not be affected or impaired thereby.

**GOVERNING LAW:** Except as otherwise described in the Agreement to Arbitrate clause below, you and DGFS agree that this agreement is made subject to, is governed by and will be construed under the laws of the State of Florida.

**AGREEMENT TO ARBITRATE. READ CAREFULLY.** This provision provides that either you or we can require that any controversy or dispute concerning this agreement be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to a jury and the right to participate in a class action or similar proceeding. You and we hereby agree that all disputes, claims and controversies of every kind and whatever nature, including, but not limited to, tort and contract claims, claims based on any federal, state, or local statute, law, consumer protection act, case, common law, order, ordinance or regulations, and claims of any type arising before or at the time of formation, at the time of entering into, during the term of, or upon or after the expiration or termination of this agreement, and the issue of arbitrability, and all other shall be resolved by final and binding arbitration. Either you or we may demand without the other's consent that any matter referenced herein be submitted to mandatory, binding arbitration. In such an event, venue shall be in a court in the Florida county in which such other party resides or has a place of business, or in such other party had no fixed place of business in Florida, then in a court in any Florida county. An arbitrator shall be selected by agreement between the parties. If the parties cannot agree on arbitration, either party may request a judge of a court of record having competent jurisdiction to designate three potential arbitrators. The parties shall then agree on one of the three so designated. Judgment upon the award may be entered in any court having jurisdiction over the matter. This arbitration provision shall be governed by and enforceable under, the Federal Arbitration Act and (to the extent state laws applicable) the state law governing this agreement.

DGFS FL 001 (Rev 04/03)