UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARDITH S. LEMY, et al.,

Plaintiffs,

v. CASE NO.: 8:11-cv-2722-T-23AEP

DIRECT GENERAL FINANCE COMPANY, et al.,

Defendants.
_____________________________________/

**ORDER**

Gardith Lemy and Marilyn Hill allege that a group of conspiring insurers sold Lemy, Hill, and a putative class worthless and unregulated "surplus" automobile insurance. Lemy and Hill sue the insurers; each insurer moves (Docs. 4, 18, 20, 21, 22) to dismiss.

I.

A few words on surplus insurance are needed before proceeding to Lemy and Hill's allegations. Generally, no one may sell insurance in Florida without a certificate of authority from the state's Office of Insurance Regulation ("the Office"). Under Section 624.401(4), Florida Statutes, "any person who acts as an insurer,

transacts insurance, or otherwise engages in insurance activities in [Florida] without a certificate of authority . . . commits a felony" unless the pertinent acts occur in accord with one of a few exceptions. One exception is the sale of surplus line insurance.

The surplus line law, Sections 626.913 to 626.937, provides a citizen of Florida access to insurance sold by an insurer not otherwise authorized to sell insurance in Florida. If no authorized general line insurer fully insures a category of risk, an unauthorized surplus line insurer may insure the risk by selling insurance through a surplus line agent and a producing agent. An unauthorized insurer must receive the Office's approval to sell surplus line insurance, and the Office must occasionally publish a list of each eligible surplus line insurer. (An "eligible" surplus line insurer remains an "unauthorized" insurer.) Before a producing agent may procure insurance from a surplus line agent and a surplus line insurer, a "diligent" search must reveal no general line insurer providing the needed insurance. *See Essex Ins. Co. v. Zota* (*Zota I*), 985 So.2d 1036, 1040 n.2 (Fla. 2008).

The eleven defendants (together, "the insurers") form four groups: Mitchel Kalmanson and Lester Kalmanson Agency ("Kalmanson"), Nation Safe Drivers and several affiliates ("Nation Safe"), certain underwriters ("the underwriters") at Lloyd's of London, and Direct General Insurance Agency and several Direct General entities ("Direct General"). The insurers sell a surplus line car insurance policy ("the policy"); Kalmanson operates as the surplus line agent, Nation Safe assists

Kalmanson, the underwriters act as the surplus line insurer, and Direct General acts as the producing agent. Lemy and Hill each purchased both the policy and a finance agreement from Direct General.

The insurers submit a copy of each policy. (Doc. 4, Exs. A-B) Because Lemy and Hill base their claims for relief on the content of each policy and raise no challenge to either policy's authenticity, the content of each policy may inform the motions to dismiss. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Each policy covers a limited amount of several expenses – including a car rental, an ambulance service, a hospital stay, and a lawyer's fee – likely to arise from a car accident or breakdown. For example, if the insured needs a hospital room after a car accident, the policy covers $125 of the expense each day for up to a year (a coverage of $45,625).

According to the third amended complaint ("the complaint"): Each policy either duplicates required general line car insurance or otherwise provides no value. The insurers use the surplus line law to avoid the reporting requirements of the general line insurance law, but the insurers nevertheless violate many sections of the surplus line law. None of the underwriters is an eligible surplus line insurer, the insurers failed to search for general line coverage equivalent to the coverage in each policy, and each policy fails to include a warning stating in part that the policy "is issued pursuant to the Florida surplus lines law." Lemy and Hill contend that these alleged violations of the surplus line law leave each policy regulated by the general

line law and that the underwriters violated the general line law's reporting requirements. The alleged violations of the surplus line law also supposedly render each policy "unregulated." Hence (Lemy and Hill reason) Direct General and the underwriters violated Section 627.8405, which bars the sale of a finance agreement for "any product not regulated under [the] insurance code."

The complaint comprises ten counts, although several of them merely assert a remedy. Lemy and Hill argue that both violations of the insurance code and the policy's worthlessness void each policy. In consequence the premiums paid to the insurers (allegedly) constitute an unjust enrichment (counts VI - X), for which Lemy and Hill seek restitution (count III). Lemy and Hill want a declaratory judgment (count II) that each policy constitutes "unauthorized" insurance, that the insurance is "not regulated" by the insurance code, that the underwriters must comply with the insurance code's reporting requirement, and that the insurance is void. Lemy and Hill also claim that each policy implicitly incorporates the entire insurance code and that each of the insurers' alleged statutory violations therefore equals a breach of contract (count IV) and a breach of the duty to act in good faith (count V). For Direct General and the underwriters' alleged violation of Section 627.8405 (count I), Lemy and Hill seek statutory damages. The proposed class includes each Florida citizen who purchased the policy on or after December 2, 2004. In addition, a sub-class comprises each class member who purchased a finance agreement for the policy

from one of the insurers. Each class definition excludes each person who submitted a claim under the policy.

II.

With one small exception (addressed in a moment), each of Lemy and Hill's claims for relief stands on at least one of three assumptions: that each policy is "not regulated," that a cause of action accrues for each "important" violation of the insurance code, and that each policy is worthless.

A.

A murderer is not "unregulated" by the penal code. The scope of a regulation is a matter of taxonomy and ontology, not of observance and compliance. *Cf.* 30 FLA. JUR. 2D INSURANCE § 3 (2012) ("the business which the organization is actually carrying on . . . is the test for determining whether it is carrying on an insurance business"). Lemy and Hill allege that the insurers and the policy violate many sections of the insurance code, both the surplus line law and the general line law. By its nature, however, something not regulated by the insurance code cannot violate the insurance code.

At times Lemy and Hill appear to use "regulated" in a special sense to mean only an insurance product reported to the Office and sold by an insurer approved by the Office. But the insurance code regulates each insurer and each insurance policy unknown to the Office. Sections 624.310(5), 624.401, 626.902, 626.909(2), and 626.910 enable the punishment of an unlawful insurer as well as anyone who aids the

insurer. *See State of Fla., Dept. of Ins. v. Nat'l Amusement Purchasing Group, Inc.*, 905 F.2d 361, 363 (11th Cir. 1990); 30 FLA. JUR. 2D INSURANCE § 213. In a section entitled "the scope and extent of regulation," Couch on Insurance explains:

> By doing business within a state, a foreign insurer subjects itself to the general laws of that state as well as those laws that are particular to insurance, and such is the case even where it fails to obtain a certificate of authority from the insurance commissioner or other governing authority to transact business in that state. Further, a foreign insurer cannot escape being subject to a state's regulatory scheme by transacting its business through an agent . . . .

1 COUCH ON INSURANCE § 3:2 (3d ed.).

Regardless of what happens to an insurer, argue Lemy and Hill, the insurance code voids an unreported policy, and the policy is therefore not regulated. This assertion proves the opposite point. If failing to satisfy the code's reporting or surplus line requirements voids a policy, the code regulates the policy – just as the code regulates an insurer by revoking a license. In any event, an unreported policy typically remains valid under Section 627.418. *See Essex Ins. Co. v. Zota* (*Zota II*), 607 F.Supp.2d 1340, 1351-52 (S.D. Fla. 2009) (Cohn, J.) (holding an insurance policy valid despite a failure to report the policy to the Office), *aff'd*, 408 Fed.Appx. 323 (11th Cir. 2011). For example, if an insured sues an insurer under Section 624.155(1)(b) for "failing to promptly settle [a] claim," the insurer may not argue that the policy is void because the insurer never became an eligible surplus line insurer or because the insurer never reported the policy to the Office. *See also* 44 C.J.S. INSURANCE § 134 (2012) ("as a general rule, . . . the failure of a foreign company to

comply with statutes [that] entitle it to do business within the state will not render a contract unenforceable by a resident of the state"). The policy remains "regulated" by Section 624.155 and the rest of the insurance code.

Lemy and Hill contend that each policy nevertheless counts as not regulated for the purpose of Section 627.8405 because the rental car and legal cost coverage in each policy is not insurance. Section 624.02 defines "insurance" in part as "a contract whereby one undertakes to . . . pay . . . a determinable benefit upon determinable contingencies" – precisely what occurs when an insurer agrees to pay for an insured's rental car and legal costs if the insured suffers an accident. Lemy and Hill pay a premium to the insurers to assume a defined risk of loss, which risk then distributes among a large group. That is insurance. *See Prof'l Lens Plan v. Dept. of Ins.*, 387 So.2d 548, 550 (Fla. 1st DCA 1980). Further, Section 624.605(1)(a) defines "casualty insurance" to include "insurance against . . . expense . . . incidental to ownership, maintenance, or use of [a] vehicle." A legal cost arising from an accident obviously qualifies as "incidental" to the use of a vehicle. And because a vehicle owner often owns a vehicle for a necessary (rather than convenient or recreational) purpose, the need for a rental car after an accident qualifies as "incidental" to the ownership of a vehicle as well. Lemy and Hill fail to show that even a piece of either policy fails to qualify as insurance regulated by the insurance code.[*]

---

[*] Section 624.124 allows a person to sell "pre-paid legal services" "related to the ownership, operation, use, or maintenance of a motor vehicle" without thereby becoming an insurer subject to

(continued...)

Section 627.8405 prohibits the financing not only of a "product not regulated [by] th[e] insurance code" but also of "a membership in an automobile club." Lemy and Hill argue (this is the one small exception mentioned earlier) that each policy constitutes an automobile club membership for which Direct General and the underwriters illegally provided Lemy and Hill a finance agreement. If "'service' rather than 'indemnity' is the principal object and purpose of [an] agreement," the agreement is not insurance. *Boyle v. Orkin Exterminating Co., Inc.*, 578 So.2d 786 (Fla. 4th DCA 1991). An automobile club provides mainly service. For instance, a stranded member can use the club membership to quickly obtain a tow truck. The policy, by contrast, provides only indemnity. The insurer promises to pay the insured for some of the expense arising from an automobile accident.

Lemy and Hill cite the insurance code's definition of automobile club, "a legal entity which [for money] promises its members or subscribers to assist them in matters relating to the ownership, operation, use, or maintenance of a motor vehicle." "Assist" in this definition must mean merely "to provide service," or else the definition swallows the definition of casualty insurance mentioned above, "insurance against . . . expense . . . incidental to ownership, maintenance, or use of

---

[*](...continued)
the insurance code. Lemy and Hill argue that Section 624.124 exempts the legal cost coverage in each policy from regulation under the insurance code. As Lemy and Hill state elsewhere, "Section 627.8405, however, mentions insurance '*products* not regulated under the provisions of' the code." (emphasis added by Lemy and Hill) Section 624.124 exempts a person from the insurance code (most prominently, the code's licensing requirements), but the section never exempts the product the person sells.

[a] vehicle." In fact, if an automobile club provides indemnity of the sort provided in each policy, the club sells insurance rather than an "automobile club membership" as defined in Section 627.8405. *Cf. Love v. Money Tree, Inc.*, 614 S.E.2d 47, 48-49 (Ga. 2005) (holding that an "auto membership" offering indemnity for legal service, ambulance service, and roadside service arising from an automobile emergency constitutes insurance); 30 FLA. JUR. 2D INSURANCE § 3. That "Section 627.8405 is a penal statute and therefore must be strictly construed," *Capital Nat'l Fin. Corp. v. Dept. of Ins.*, 690 So.2d 1335, 1337 (Fla. 3d DCA 1997), confirms that the definition of "automobile club membership" cannot stretch to encompass the policy.

B.

The complaint asserts that the insurers and the policy violate many sections of Florida's insurance code. Using public documents and the two policies, the insurers disprove most of the complaint's assertions. The complaint claims that the underwriters and Direct General violated Section 627.8405. As just explained above, the claim fails. The complaint accuses the underwriters of ineligibility to sell surplus line insurance. Documents from the Office confirm that each accused underwriter enjoys eligibility. (Doc. 18, Exs. K-M) The complaint alleges that each policy lacks a warning required by Section 626.924(1). Each policy includes the warning.

The complaint asserts that the insurers failed to report the policy to the Office in accord with Chapter 627. Specifically, the complaint asserts a violation of Sections 627.062 and 627.0651, each in part I of Chapter 627, and a violation of

Section 627.410(1), in part II. In 2008 the Florida Supreme Court concluded that surplus line insurance must comply with all of Chapter 627 except for part I. *Zota I*, 985 So.2d 1036, 1041-44. Surplus line insurance may ignore Sections 627.062 and 627.0651.

Applying Section 627.410(1) is trickier. Section 627.410(1) requires an insurer to gain the Office's approval of a "basic insurance policy" before the insurer may sell the policy. Reversing the Florida Supreme Court, a recent law, Section 626.913(4), excuses a surplus line policy from Chapter 627, including the approval requirement in Section 627.410. The new law applies to each action begun after May 15, 2009. 2009 Fla. Sess. Law Serv. Ch. 2009-166, sec. 7 (West). Although this action began in December, 2008, the first complaint alleged only a violation of Section 627.8405, the section barring some financing agreements. (Doc. 7, Ex. 1) The action at the time included only Lemy and Direct General; allegations involving the two policies and the underwriters, the insurers of each policy, arose later, in June, 2009. Lemy in effect began a new action after the surplus line exemption from Chapter 627 began, *see* (Doc. 96 at 3-4), and the claim that the insurers violated Section 627.410(1) therefore fails. (Lemy and Hill never explain or support their odd notion that an unauthorized insurer's violation of the surplus line law transforms the insurer's product into a general line that must comply with Chapter 627.)

The only section of the insurance code cited by the complaint that either the insurers or the policy appear to violate is Section 626.916(a), which requires a surplus

line agent to verify that the producing agent, before procuring surplus line insurance, searched "diligently" for the insurance in the Florida insurance market. The complaint states that each policy is "unauthorized" because identical insurance exists in Florida, but the surplus line law never requires a producing agent to prove a negative, *i.e.*, that no general line insurer sells the needed insurance. Defining a "diligent" search, Section 626.914(4) merely requires the producing agent to ask at least three Florida insurers whether they sell the needed insurance. Each policy lists three insurers who declined to provide insurance equivalent to the policy, but each policy lacks information, such as the reason each insurer declined, that the administrative rule requires.

The insurers' motions to dismiss reduce Lemy and Hill to asserting less severe violations of the insurance code. First, Lemy and Hill challenge the Office's approval of the underwriters as an eligible surplus line insurer. But the underwriters may rely on the Office's approval. Under Section 626.914, an insurer qualifies as an eligible surplus line insurer if the Office approves the insurer to sell surplus line insurance. Eligibility arises from approval, not from 'correct' or 'warranted' approval. Even if they could attack it, Lemy and Hill offer no good reason to doubt the validity of the Office's approval of the underwriters. Second, although each policy includes the warning required by Section 626.924(1), Lemy and Hill claim that the warning needs to appear in capital letters.

In short, Lemy and Hill wrongly claim that each policy "completely" violates "key" or "important" sections of the insurance code. At worst, each policy displays a couple of minor defects – a warning in lower case letters or an irregular and incomplete (but not absent) affidavit confirming a diligent search. If violating the sections of the insurance code cited in the complaint could render an insurance policy breached, void, or illegal, one would say that neither policy is sufficiently defective to qualify as breached, void, or illegal.

Lemy and Hill, however, face a bigger problem. Some authority holds that a contract which violates a statute typically becomes void. *See*, *e.g.*, *Park v. Wausau Underwriters Ins. Co.*, 547 So.2d 213, 215 (Fla. 4th DCA 1989). *American Mutual Fire Insurance Co. v. Illingsworth*, 213 So.2d 747 (Fla. 2d DCA 1968), holds that an insurance policy is void if the insurer fails to submit the policy to the Office. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1250 (11th Cir. 2003); *CNL Hotels & Resorts, Inc. v. Twin City Fire Ins. Co.*, 291 Fed.Appx. 220, 225 (11th Cir. 2008). But the Florida Supreme Court recently affirmed a more reasonable and more widely followed rule, which holds that a policy violating a section of the insurance code remains valid unless the code explicitly states that violating the section voids the policy. *QBE Ins. Corp. v. Chalfonte Condo. Apartment Assoc., Inc.* (*Chalfonte II*), --- So.3d ----, 2012 WL 1947863, *9-*11 (Fla. May 31, 2012); *see also Zarrella v. Pac. Life Ins. Co.*, 755 F.Supp.2d 1218, 1228-29 (S.D. Fla. 2010) (Cohn, J.); *El-Ad Enclave at Miramar*

*Condo. Assoc., Inc. v. Mt. Hawley Ins. Co.*, 752 F.Supp.2d 1282, 1292 (S.D. Fla. 2010) (Jordan, J.); *Vision I Homeowners Assoc., Inc. v. Aspen Specialty Ins. Co.*, 643 F.Supp.2d 1356, 1362 (S.D. Fla. 2009) (Dimitrouleas, J.); *Zota II*, 607 F.Supp.2d at 1352; *RTG Furniture Corp. v. Indus. Risk Insurers*, 616 F.Supp.2d 1258, 1267 (S.D. Fla. 2008) (Hurley, J.); *Buell v. Direct General Ins. Agency, Inc.*, 488 F.Supp.2d 1215, 1217-18 (M.D. Fla. 2007) (Lazzara, J.), *aff'd*, 267 Fed.Appx. 907 (11th Cir. 2008); *Tatum v. Bokofsky*, 842 F.Supp. 521, 525 (S.D. Fla. 1994) (Zloch, J.); *United Auto. Ins. Co. v. A 1st Choice Healthcare Sys.*, 21 So.3d 124, 128-29 (Fla. 3d DCA 2009).

The insurance code provides a private cause of action or a private remedy for a violation of a few specific sections. Because "the legislature is perfectly capable of crafting an express penalty" for a violation of a section of the insurance code, the judiciary "cannot provide a remedy when the legislature has failed to do so." *Chalfonte II*, --- So.3d ----, 2012 WL 1947863 at *10-*11; *see also Swerhun v. Guardian Life Ins. Co. of Am.*, 979 F.2d 195, 198 (11th Cir. 1992) ("we [are] reluctan[t] to read private rights of action in state laws where state courts and state legislatures have not done so"); *Tatum*, 842 F.Supp. at 525 ("without clear and specific evidence of legislative intent, the creation of a private right of action by a federal court abrogates both the prerogatives of the political branches and the obvious authority of the states to sculpt the content of the state law . . . . [T]his Court [cannot] legislate a cause of action where none exists"). Further, a plaintiff "may not evade the Florida

legislature's decision to withhold a statutory cause of action" for a violation of the insurance code "by asserting common law claims based on such violations." *Buell*, 267 Fed.Appx. at 909-10; *see*, *e.g.*, *Mt. Hawley*, 752 F.Supp.2d at 1292.

None of the sections that the insurers or the policy allegedly violate states or cites a private remedy. However, the Office retains a comprehensive power to punish and to otherwise regulate each person who sells insurance, including surplus insurance, in Florida. *See QBE Ins. Corp. v. Chalfonte Condo. Apartment Assoc., Inc.* (*Chalfonte I*), 526 F.Supp.2d 1251, 1256 (S.D. Fla. 2007) (Middlebrooks, J.) (noting that under Section 624.310(5) the Office may fine any person for a violation of any provision of the insurance code); 30 FLA. JUR. 2D INSURANCE § 213 (noting that under Section 626.909(2) the Office may "bring any action, suit or proceeding . . . provided for in the insurance code against any unauthorized insurer or person representing or aiding the insurer for a violation of . . . any provision of the [insurance] code"). The Office (or, if an insurer commits a crime, the state) enjoys an exclusive authority to protect the public by enforcing the sections of the insurance code for which the legislature provides no private remedy. *See Chalfonte II*, --- So.3d ----, 2012 WL 1947863 at *9 ("when a statute merely makes provision to secure the safety or welfare of the public, it will not be construed as establishing civil liability"); 1 COUCH ON INSURANCE § 2:7 (a state typically assigns to the insurance board or office the duty "to protect the public interest, . . . to execute the insurance laws, and to see that violations of the insurance laws are properly dealt with or punished").

The Office may ensure that the insurers observe each section of the insurance code cited in the complaint. Lemy and Hill may not.

C.

Although Lemy and Hill persistently assert that each policy is worthless, the complaint alleges that only part of each policy – the ambulance and hospital room coverage – duplicates coverage already required by Florida law. Under Section 627.736(1), a driver needs a policy that pays eighty percent of reasonable medical expense up to $10,000. The underwriters argue that each policy's $46,625 of hospital room coverage and $100 of ambulance coverage compensate an insured for the twenty percent of medical bills and the medical bills above $10,000 that state-mandated insurance fails to cover. Lemy and Hill never rebut the underwriters' sensible analysis. Lemy and Hill also never explain why any of the other coverage in the policy is worthless.

Also, Lemy and Hill never say why they excluded from the putative class each person who submitted a claim under the policy. If the policy is worthless because the insurers refuse to pay a claim, Lemy and Hill forfeit that point because neither submitted a claim. If the policy is worthless because the coverage is duplicative, no one ever submits a claim, and the need to exclude each claimant betrays the policy's worth. Either way, Lemy and Hill's allegation that the policy is worthless collapses.

III.

The insurance code regulates the policy, the policy sufficiently complies with the code, Lemy and Hill in any case may not sue for a violation, and the insurers sold Lemy and Hill a product of value. Hence the policy is valid, no breach occurred, and the insurers harbor no unjust enrichment. Lemy and Hill cannot establish that the underwriters and Direct General sold either finance agreement in violation of Section 627.8405.

The motions (Docs. 4, 18, 20, 21, 22) to dismiss are **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**. The clerk is directed to terminate each pending motion and close the case.

ORDERED in Tampa, Florida, on June 19, 2012.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE